FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE    05 JUL 21  PM 4:29
WESTERN DIVISION

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

|  |  |
|---|---|
| BRENDA MEDRANO et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 04-2425 B/P |
| ) | |
| MCDR, INC. and M. A. MORTENSON ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## ORDER MODIFYING JUNE 19, 2005 ORAL RULING DENYING DEFENDANT MORTENSON'S MOTION TO COMPEL

Before the court is defendant M. A. Mortenson Company's ("Mortenson") Motion to Compel, filed June 1, 2005 (dkt #48). On June 20, 2005, plaintiffs filed their response. On July 19, 2005, the court held a hearing on the motion. Counsel for all parties were present and heard. At the hearing, the parties informed the court that based on recent developments in the case, several issues raised in the motion to compel were now moot. Therefore, the only issue addressed by the parties at the hearing was whether the plaintiffs should be required to produce to Mortenson three witness interviews that were conducted by plaintiffs' counsel and recorded on audiotape and/or videotape. At the conclusion of the hearing the court, ruling from the bench, DENIED Mortenson's motion to

This document entered on the docket sheet In compliance
with Rule 58 and/or 79(a) FRCP on 7-21-05



compel.  The court hereby MODIFIES, sua sponte, its oral ruling as follows:

This case arises from an accident that occurred on June 5, 2003, when two Mortenson employees working at a construction site fell from some scaffolding.  One of the workers, Rogelio Galvan, died while the other worker, Jose Ruben Lara Buendia, suffered severe injuries.  Several months after the accident, sometime in February and March 2004, two attorneys who now represent the plaintiffs interviewed employees of Mortenson and defendant MCDR, Inc., in preparation for filing their lawsuit.  Three of these employees included Adrien Trejo, Geronimo Gerrero, and Armando Delgado.  The interviews were recorded either on videotape or audiotape.  In the present motion, Mortenson asks that the court require the plaintiffs to produce the recordings of these three interviews.  Alternatively, Mortenson seeks an order prohibiting the plaintiffs from making any use of these interviews at trial.[1]

Federal Rule of Civil Procedure 26(b) controls the scope of discovery.  Rule 26(b)(3) provides that:

> a party may obtain discovery of documents and tangible things otherwise discoverable. . . and prepared in anticipation of litigation or for trial by or for that

---

[1] Mortenson's alternative request is essentially a motion to exclude evidence, which is a non-dispositive motion.  See Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery, 179 F.R.D. 450, 456 (D.N.J. 1998) (citing Ferriso v. Conway Organization, 1995 WL 580197, at *1 (S.D.N.Y. Oct. 3, 1995)(unpublished); Jesselson v. Outlet Associates of Williamsburg, Ltd., 784 F.Supp. 1223, 1227-28 (E.D. Va. 1991)).

> other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made the court shall protect against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). In <u>Toledo Edison Co. v. G A Technologies, Inc.</u>, 847 F.2d 335 (6th Cir. 1988), the Sixth Circuit established a sequential analysis that the court must use in determining whether the work product privilege applies. First, the court must determine whether the document is "otherwise discoverable under subdivision (b)(1)," that is, that the document is relevant and not privileged. Second, the party seeking to invoke the work product privilege must show that the information was (1) prepared in anticipation of litigation or for trial, and (2) prepared by that party or its representative. Third, if such a showing is made, the burden shifts to the party seeking disclosure of the document to show (1) that the party has a substantial need for the information and (2) that the party is unable to obtain the substantial equivalent of the materials without undue hardship. Finally, even if the party seeking the document shows substantial need and undue hardship, the objecting party may avoid discovery by showing that the document contains mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party

concerning the litigation. Id. at 339-340; see also Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co. Of Pittsburgh, No. 93-3084, 1994 WL 58999, at *3 (6th Cir. Feb. 25, 1994); Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn., 206 F.R.D. 202, 206-07 (W.D. Tenn. 2002).

In this case, the three tape recordings at issue are work product. According to plaintiffs' counsel, the interviews were conducted by the plaintiffs' attorneys and involve questioning of three fact witnesses about issues relevant to this lawsuit. See Hickman v. Taylor, 329 U.S. 495 (1947). The interviews took place about eight months after the accident, and were conducted in order to assist plaintiffs' counsel in gathering facts in preparation for filing this lawsuit.

Mortenson has not demonstrated that it has a substantial need for the information and that it is unable to obtain the substantial equivalent of the materials without undue hardship. At the hearing, Mortenson stated that it has recently deposed Trejo and Gerrero without the benefit of having the taped interviews, and expressed no concerns or problems about those depositions. "The mere possibility that [prior] statements may have some impeachment value does not create a substantial need for their production." Kintera, Inc. v. Convio, Inc., 219 F.R.D. 503, 509-10 (S.D. Cal. 2003)(denying motion to compel production of signed witness statements); see also Gay v. P.K. Lindsay Co., 666 F.2d 710, 713

(1st Cir. 1981)("it seems well-settled that there is in general no justification for discovery of the statement of a person contained in work product materials when the person is available to be deposed . . . ."); Zenith Elec. Corp. v. WH-TV Broadcasting Corp., No. 01 C 4366, 2003 WL 21911066, at *6 (N.D. Ill. Aug. 7, 2003)(unpublished)("A court is not justified in ordering a litigant to permit his adversary to inspect witness statements, which he has procured in preparing for trial, upon the adversary's mere surmise or suspicion that he might find impeachment material in the statements.")(quoting Hauger v. Chicago R.I. & P.R. Co., 216 F.2d 501, 508 (7th Cir. 1954)); Suggs v. Whitaker, 152 F.R.D. 501, 507-08 (M.D.N.C. 1993)(stating that "a party must present more than speculative or conclusory statements that the reports will contain invaluable impeachment material" in order to overcome qualified work product immunity).

Moreover, these interviews were conducted approximately eight months after the accident (i.e. not contemporaneous statements recorded at or near the time of the accident), and there is simply no indication that the depositions are not a substantial equivalent of the interviews. Cf. Smith v. Diamond Offshore Drilling, Inc., 168 F.R.D. 582 (S.D. Tex. 1996)(transcripts of recorded interviews conducted just a few days after accident would be more accurate than statements that could now be obtained from same witnesses, and thus plaintiff overcame qualified work product protection); Suggs,

152 F.R.D. at 507 ("if a witness has no recollection of the events of the accident, this loss of memory constitutes an inability to obtain the substantial equivalent of the facts in the report by other means.").

Having concluded that the taped interviews are work product, the court turns now to Mortenson's request that, should the court conclude that the taped interviews constitute work product, the court should prohibit the plaintiffs from using these interviews for any purpose at trial. At the June 19 hearing, the court noted that the Federal Rules governing both initial disclosures and pre-trial disclosures specifically exclude production of materials used solely for impeachment purposes. See Fed. R. Civ. P. 26(a)(1)(A) and 26(a)(3). The court further observed that the District Judge's pre-trial procedures form, which is attached to the trial setting letter dated September 7, 2004, also excludes impeachment materials from pre-trial disclosure. On this basis, the court ruled that since the statements will only be used by the plaintiffs (if used at all) for impeachment purposes at trial, the plaintiffs will not be required to produce these statements prior to trial as a condition for using them to impeach these witnesses at trial. Upon further consideration, and after conducting additional review of the case authority, the court concludes that this latter ruling was erroneous.

Contrary to plaintiffs' argument at the hearing that

impeachment materials are not discoverable by the opposing party, courts in this circuit as well as other circuits have held that impeachment materials are not excluded from discovery under the Federal Rules. "A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence at trial." Varga v. Rockwell Int'l Corp., 242 F.3d 693, 697 (6th Cir. 2001); see also Karr v. Four Seasons Maritime, Ltd., No. 02-3413, 2004 WL 797728, at *1-2 (E.D. La. April 12, 2004); Ward v. CSX Transp., Inc., 161 F.R.D. 38, 39 (E.D.N.C. 1995). Exclusion of impeachment materials from "disclosure" - for purposes of initial disclosures and pretrial disclosures under Fed. R. Civ. P. 26(a)(1)(A) and 26(a)(3) - does not preclude a party from obtaining "discovery" of those impeachment materials if those materials are sought in a discovery request.[2] As the court in Karr explained:

> [N]othing in the Federal Rules permits a party to refuse to produce impeachment evidence that is responsive to an opponent's *discovery* requests. The only basis for withholding such evidence is found in Rule 26(a)(1) and (3). However, Rule 26(a) governs *disclosures* only, not discovery.
>
> Disclosure and discovery are two distinct and

---

[2] It is undisputed that these tape recordings were included in Mortenson's discovery requests. Specifically, Mortenson's document request numbers 6, 7, 25, and 26 ask the plaintiffs to produce all statements (whether recorded or unrecorded) relating to discussions with persons with knowledge or information about matters alleged in the complaint. In response to these requests, the plaintiffs asserted that the taped interviews are protected by the work product doctrine.

different procedural mechanisms. Disclosure is the exchange of information required by the Federal Rules of Civil Procedure *without* request. Discovery is a means by which information may be obtained from others *upon* request. . . . Merely because evidence to be used solely for impeachment purposes is excluded from *disclosure* under Rule 26(a)(1) and (3) does not mean that it is protected from *discovery* under Rule 26(b) using the traditional discovery devices listed in Rule 26(a)(5). . . .

Thus, discovery parties are free to seek impeachment evidence in discovery, as Karr has done here, and parties responding to discovery are not entitled to withhold impeachment materials on that ground.

Id. at *1-2 (emphasis in original); accord Ward, 161 F.R.D. at 39; Wright & Miller, Federal Practice and Procedure § 2015 (2d ed. 2003).

In this case, the plaintiffs are on the one hand asking that the recorded interviews be protected from disclosure as work product, but on the other hand asking that they be allowed to use the recordings, if the need arises, to impeach these witnesses at trial. Given the court's conclusion that impeachment materials are generally discoverable, this would result in the plaintiffs using the work product doctrine as both a sword and a shield, and would be contrary to the Federal Rules' goal of avoiding trial by surprise. As one commentator has noted,

When a party uses work product in the course of a trial or other proceeding, for example to impeach or cross-examine, any work product privilege is waived. The basis for the waiver is obvious: you cannot have your cake and eat it too. If any attorney intends to rely on a document in any testimonial fashion, the totality of that document is put into issue and becomes discoverable.

Edna Epstein, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u>, ABA Section of Litigation at 628 (4th Ed. 2001)(citing cases).[3]

For these reasons, the court concludes that the plaintiffs will not be required to produce these recorded interviews as part of discovery. However, if the plaintiffs intend to attempt to use these recorded interviews for impeachment purposes at trial, they must produce these recordings to the defendants at least thirty (30) days before trial.[4] If the plaintiffs choose not to produce these recordings, they shall be barred from using the recordings at trial. <u>See</u> <u>Snead v. American Export-Isbrandtsen Lines</u>, 59 F.R.D. 148, 151 (E.D. Pa. 1973)(requiring the defense in personal injury case to disclose surveillance films or be barred from showing them at trial; "[i]f the defense has films and decides it want to use them, they should be exhibited to the plaintiff and his counsel."); <u>see also</u> <u>Wegner v. Cliff Viessman, Inc.</u>, 153 F.R.D. 154, 159-60 (N.D. Iowa 1994).

Finally, regarding Mr. Delgado, the court will allow the parties to depose him prior to trial. If the parties are unable to

---

[3] Moreover, there is nothing to prevent the plaintiffs from asking these witnesses in their depositions the same questions asked during their 2004 interviews, and using the deposition testimony instead of their interviews to impeach them at trial.

[4] Of course, whether or not the trial judge will allow these types of statements to be used for impeachment is a separate issue and not one addressed in this order.

locate Mr. Delgado or otherwise take his deposition, Mortenson may renew its motion with respect to his recorded interview.

IT IS SO ORDERED.

/s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

July 21, 2005
Date

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 58 in case 2:04-CV-02425 was distributed by fax, mail, or direct printing on July 21, 2005 to the parties listed.

---

Robert B. Hale
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Ralph Noyes
LAW OFFICE OF RALPH NOYES
4087 Summer Ave.
Ste. 216
Memphis, TN 38122

Kirk A. Caraway
ROSENBLUM & REISMAN
80 Monroe Ave.
Ste. 950
Memphis, TN 38103

David J. Goldstein
FAEGRE & BENSON LLP
90 S. Seventh St.
2200 Wells Fargo Center
Minneapolis, MN 55402--390

Mark Anthony Lambert
ALLEN SUMMERS SIMPSON LILLIE & GRESHAM, PLLC
80 Monroe Ave.
Ste. 650
Memphis, TN 38103--246

Jeffrey S. Rosenblum
ROSENBLUM & REISMAN
80 Monroe Ave.
Ste. 560
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT